Oriental Financial Group Incorporated et al. v. Cooperativa de Ahorro y Credito Oriental. May it please the Court. Leslie Flores on behalf of Plaintiff Appellants, Oriental Financial Group, Oriental Financial Services Court, and Oriental Bank and Trust. Collectively Oriental. Oriental raised two errors in appeal that can be summarized in one key question. Did the district court commit legal error, clearly err, and abuse its discretion in failing to enter a permanent injunction that adequately protects Oriental's Oriental mark? The answer is yes. Oriental proved and the court found that its mark is inherently distinctive and arbitrary when applied to an institution that provides financial services. Oriental proved and the court found that Oriental's mark is strong and famous in Puerto Rico. Yet the court entered a permanent injunction that only prohibits Cooperativa, a competing financial institution, from using one particular logo. The record shows that Cooperativa's use of the co-op Oriental name, not just the logo, was the source of actual confusion. Despite this, apart from barring Cooperativa from using Oriental's Orange Trade Dress, the court imposed no restrictions on how Cooperativa may use Oriental's strong mark. As it stands, Cooperativa is free to use Oriental's strong mark however it sees fit so long as it doesn't use the Orange Trade Dress or the 2009 logo. The first time this case reached this court, it was because the district court asserted that the abbreviated names were not infringing because Oriental had not presented evidence of actual confusion before 2009. And the court committed the same mistake after remand, essentially holding Oriental to a showing of actual confusion in order to prevail. The majority of the likelihood of confusion factors favored Oriental, and in the end, the court favored Cooperativa. The tally was 5-3 as to the abbreviated marks Cooperativa Oriental and Co-op Oriental, and 6-2 as to the derivatives Club de Orientalito and Oriental Co-op. And yet, the court found for Cooperativa. The likelihood of confusion analysis is not a simple mathematical equation, but the record clearly shows that Oriental should have prevailed and that the district court gave a new weight to the lack of actual confusion before 2009. Counsel, in looking at the issue of the similarity of the marks, the court, it's very explicit in its opinion, seems to say that in Puerto Rico, members of the public understand the significance of the term Co-op, and they will understand that a Co-op is different than a traditional bank, and because they have that understanding, it significantly, in the court's view, lessens the likelihood of confusion. You seem to argue that that was a legal error on the part of the court. What prevents the court from bringing its own sense of what people in Puerto Rico understand to its analysis of the issue of the similarity of the marks? Well, first of all, the court misapplied the proper legal test for similarity of the marks. That factor is determined based on the sight, sound, and meaning of the marks, and there's no analysis in the opinion in order as to that. The court focused on the weak, generic, descriptive term Co-op, as opposed to the dominant portion of the mark, which is Oriental, and the court also assumed the fact that it's not subject to judicial notice. Basically, the court assumed that people would know that there's a legal distinction between a bank and a credit union, which is a legal fact, and then it jumped to the assumption that people will not be confused by knowing that legal fact, and the court cannot sidestep the likelihood of confusion factors and make that ultimate likelihood of confusion finding without making the proper test. So I gather it's your position that there had to be the court could not rely on its own intuition, if you will, about what people in Puerto Rico understand about the significance of that term. There would have to be some evidence in the record to support the point that the court was making? No. The fact that people may know that there's a distinction or they may recognize the terms Co-op and what is a bank, does not dispel likelihood of confusion, and the court was also mistaken by assuming that Oriental is merely a bank. The record established that Oriental provides comprehensive financial services throughout Puerto Rico. Its main subsidiary is a bank, but it also has an insurance company named Oriental Insurance. It also has a brokerage firm, and people associate those institutions with Oriental because of the strength of Oriental's mark, and the way Oriental presents itself to the public by having a family of marks. So it was likely for people to be confused and assuming that Co-op Oriental is an extension of Oriental's business. The record was clear that people did not know that a bank cannot own a credit union under Puerto Rico law. I'm an attorney. I didn't know that before this case. That is a legal fact that the court assumed that people would know. There is case law before this circuit regarding the federal penitentiary here in San Juan, I mean in Guaynabo, where the court had assumed that people would know that federal penitentiary is within the federal jurisdiction of the U.S. because people say federal penitentiary, and it was held to be an error to determine, assume that people would know that legal distinction. If I understand the argument, you don't dispute that the word cooperativa might give notice of people that they were not in a bank and that they were in a co-op. Instead, if I understand what you're saying and where the district judge went wrong, was that even though people from that word might realize they were in a co-op rather than a bank, they wouldn't know from that fact alone whether it was Orientals or not. And that's due to the family of marks. And I understood you to be saying if there's evidence needed, the evidence would be needed because it's just not intuitive that the word cooperativa would dispel the notion that the co-op was somehow affiliated with Oriental. Because if it is somehow affiliated, then the consumer confusion point would still stand. That is correct, and that goes to another point that we made in our brief. The court did not take into account the family of marks doctrine and the fact that Oriental uses its mark as the surname of its family of marks. And even this court had pointed out that the fact that Oriental uses the Oriental mark as the surname of its family of marks, renders the addition of the descriptive generic term co-op even less significant. Can I ask you then about what evidence we have that the name alone is the source of the confusion? And I guess it's in two parts. First, what is the evidence that we have in the record that the name alone is confusing? And then secondly, if the name alone is confusing, you seem to concede that they can keep the name Oriental in the long form. That is correct. So I'm a little confused how the name alone can simultaneously be confusing but not confusing. Because trademark law assesses if a particular use of a mark is likely to cause confusion. Our position, and it was conceded in the first appeal, is that the use in the full name of cooperativas institution is not likely to cause confusion, because it's Cooperativa de Ahorro y Credito Oriental, and it's not the same as to have a five-word name where the mark would be just at the end of it, as to have Co-op Oriental or Cooperativa Oriental, which is only a two-word mark, which is exactly like Oriental presents its family of marks, Oriental Bank, which is the mark together with a weak generic term. It has Oriental insurance, it has Oriental mortgages, Oriental group. So the two words, Co-op Oriental and Cooperativa Oriental, is akin to how Oriental presents its family of marks, and it is not the same as to have Cooperativa de Ahorro y Credito Oriental, which the people will naturally pronounce in Spanish also. Go ahead, finish your point. Well, he also asked where on the record was the evidence of people being confused by the name. The name alone? The name alone. There was testimony to that effect by several relations officers in Ponce that they all asked about the name. There was this witness, Mirla Mercado testified, it's at page 388 of the record, when asked, you know, if people asked about the markings, they said they all asked about the name. They believe it's the same thing. They think it's a part of Oriental. The Ponce relations officer testified also at page 393 of the record that Oriental's own client found it strange that the institutions were not affiliated because they, quote, unquote, even have the same name. So there was evidence on the record of people being confused merely by the name. Counsel, I understand from your point of view you would say this, but you're very dismissive of the finding of the district court that for about a 10-year period between 1999 and 2009, when the word Oriental was being used by both the appellant and the appellee, there was no evidence of confusion. That is the district court's finding. And you, I guess you say that doesn't matter because it's only when the appellee began to increase its profile in Puerto Rico that the concerns about confusion began. But nevertheless, there was that long period of time when these two parties were in sort of the same business, at least in part of Puerto Rico they were both doing the same business, and there was no evidence of confusion. Well, two things. Absence of actual confusion may only be materials when the marks have coexisted in the same market for a substantial period of time. What the record showed was that the institutions coexisted in one single market, which is the small eastern town of Humacao, for a prolonged period. But in that area, limited though it might have been, that confusion resulted from the proximity of those institutions with this common mark. And then again, lack of actual confusion weighs heavily only when the particular circumstances indicate that such evidence should have been available. And those circumstances are not present here. There's a 10-year gap immediately preceding this suit from 1999 to 2009, for which there's no evidence on the record of Cooperativa having used those disputed marks, not even in that town of Humacao. The evidence of their use of the marks in Humacao was old and negligible, it was sporadic, it was often accompanied by the full corporate name of the institution, Cooperativa de Oro Crédito Oriental, and even in Humacao, the headquarters of the Cooperativa bore the full name of the institution on its facade until 2010. So there was no factual predicate for the court to hold that there should have been any likelihood of confusion, even in Humacao. So again, 10 years of no use, no evidence. Had they had evidence of use of that mark, they would have presented that evidence, and they didn't. And it's supposed to have a continuous, permanent use of the mark for you to presume that there would be likelihood of confusion, and there is no evidence on that. And also, we posit that the district court abused its discretion by failing to take into account this court's key mandate to evaluate the mark standing alone. Had the court evaluated the mark standing alone, it would not have focused, as it did, on Cooperativa's infringing 2009 logo. Had the court evaluated the mark standing alone, it would have considered the likelihood of confusion of those marks and used in non-visual mediums, such as radio or loudspeakers, where obviously Cooperativa's new approved logo will not appear. Given the legal errors that you assert the district court made, why wouldn't, if we agreed that there were such errors on, say, on the family of marks in its analysis of what the likelihood of consumer confusion would be through the use of the word Cooperativa, why wouldn't the appropriate remedy be to vacate and remand for the district court to then make an assessment with a proper understanding, given all the evidence? Given the legal errors that you assert the district court made, why wouldn't the appropriate remedy be to vacate and remand for the district court to then make an assessment with a proper understanding, given all the evidence? Given the legal errors that you assert the district court made, why wouldn't the appropriate remedy be to vacate and remand for the district court to then make an assessment with a proper understanding, given all the evidence? Good morning, Your Honors. May it please the Court, Carla Ferrari on behalf of Cooperativa de Ahorra y Credito Oriental. Your Honors, we do not believe that the Court erred or clearly erred in establishing the first factor in similarity of the marks. It is true that similarity of the marks is an analysis that is made considering the total effect and the mark as a complete mark, and it's done in a way that is not a total effect. In light of examining the sound, sight, and meaning, and that's what the district court did in this case. The district court played, afforded considerable weight on the fact that the addition of the term cooperativa or co-op, aside from the term oriental, was enough to provide that the marks were dissimilar in the eyes of the consumer, particularly based on the fact that in Puerto Rico, the only institutions that can use the term co-op or cooperativa are the credit unions. And that's mandated by the law. So in terms of sight, sound, and meaning... Counsel, doesn't the district court's analysis seem to assume, and it strikes me as an unlikely assumption, that members of the public understand the legal significance of that reference to co-op or cooperativa? What would be the basis for the district court's assertion that there is such a broadly held understanding of that term? Sure, Your Honor. More than a legal inference, there's evidence on the record that shows that the people of Puerto Rico know the difference between a cooperativa and a co-op. Not only was it the testimony on page 552 of a person named Linda Providencia, an actual customer of both Oriental Bank and Cooperativa Oriental, but such was the testimony of the president of the Cooperativa Oriental, Mr. Ana Rodriguez, which testified as to those differences between the institutions, particularly signaling what the cooperativa is. But wasn't the evidence that, yes, there was recognition that a cooperative is different than a traditional bank, but that same individual thought that perhaps Oriental had actually, I guess, gone into the business of having such a bank? Isn't that what the evidence shows? Well, that's another instance of the evidence, and it doesn't show that... The thing is, Your Honor, is that this case is a very fact-specific case. And when you actually go to see the instances of alleged actual confusion, they are really, really hard to swallow, Your Honor. Once you take a close look at the record and you see telephone calls being made to OFG, Oriental Financial Group, by people having in their hands documents that relate the name of Cooperativa Oriental, it's very hard to imagine that someone can, without any evidence, and the document before them that states Cooperativa Oriental somehow dials the telephone number of a different institution. On your theory, could I start a restaurant fast food chain tomorrow called Cooperativa McDonald's? Yes, Your Honor, and can you do that? That's the question? Yeah, could I? No, you can't, obviously, Your Honor, and that will take us to our second point in this case. Basically, Cooperativa Oriental Financial Group tries to state that they have created a public recognition of a family of marks. The family of marks doctrine is a very specific doctrine under trademark law, and it requires that plaintiffs show that they have made use of the stand-alone surname that constitutes the family of marks in commerce, meaning that they have adopted the stand-alone mark in commerce prior as a condition to establishing that they have a family of marks. More so, the law also requires, the case law also requires that prior to the junior user's entry at the market in commerce, that the plaintiff started using their family of marks as a family of marks, as the trademark law recognizes what a family of mark is, which was discussed in the McDonald case for the prefix mac. And there's no evidence of record, Your Honors, in this case, that Oriental Financial Group had used the term oriental standing alone, and apart from its complete I thought our decision the last time around specifically instructed that there was no evidence of record in this case. And that's, and the district court did not take into account that. And we assert that the legal standard for establishing that there is a family of marks is what we're stating, and there's no evidence on the record. There was, there seems to be no evidence. But, I mean, for better or worse, doesn't the law of the case suggest that the First Circuit seemed to be of a different view? Since it specifically said, in evaluating similarity to the district court, you should take account of the family of marks. You need to analyze whether there is a family of marks first. Well, that's not what it said, though, in our decision. Well, Your Honors, we ascertain that according to the case law that has treated family of law trademarks, and that doctrine, which has been a very different to establish and to assert that. So you're challenging whether there's a family of marks? I'm challenging whether there's a family of marks. Was that raised below to the district court? Well, we raised below the fact that Oriental Financial Group did not make use of its standalone mark, which is one of the requirements to have a family of marks. And that's clearly as viewable in the record, Your Honors. We filed yesterday a motion so that the court could take judicial notice of the registrations filed by OFG, both at the USPTO and at the Puerto Rico Trademark Office. And those applications, registrations, whether abandoned or alive, they do state filing dates and dates of use after Cooperativa Oriental started using the term Oriental as part of its trademarks. There's no evidence of any of those applications or registration of a mark under the standalone term Oriental prior to the filing of this case. In fact, all of those three applications that were filed were filed after the cease and desist letter sent to Cooperativa in this case. If we assume that the family of marks doctrine, that this contention making now either is waived or is wrong, and that we're bound to take this case as if there was a family of marks established, how can the district court's analysis of Cooperativa be reconciled with the family of marks point? What evidence is there that supports a finding that the public would, intuit from the use of the word Cooperativa that Oriental could not possibly have owned a co-op? Is there any evidence? That they could have, the fact that they could have not owned a co-op, there's no evidence. Well, there's evidence of that under Mr. Angan's testimony when it marks the differences between a bank and Cooperativa. No, no, not my question. My question is what evidence is there to support the conclusion that the public would be of the view that even though there's a difference between a co-op and a bank, the public would know that Oriental could not own a co-op? The fact that it could have owned, there's none. The fact that they're not the same. I understand that, but since, if we take the family of marks point, their argument is that the confusion stems not from a confusion about whether something is a bank or a credit union. The confusion stems from who owns the credit union and that the word co-op does not alleviate the confusion if it travels with the word Oriental. The fact, Your Honor, is that in the record there's no evidence of any customer or any public person being confused as to the source of the services for use of the word mark. Well, what about the evidence that was cited in their brief and that was just referenced at oral argument of the people calling, who called thinking they were calling Oriental about the co-op and then the testimony is those people were saying, oh, I was confused because they used the same name. Well, Your Honor, other than having a very problematic evidentiary record in this case, mainly constituted by hearsay evidence and self-serving evidence from OFG, which of course in trademark cases it's really not the best evidence to bring forward, there's nothing in the record that would show that, I mean, those instances are there. There could be two instances. There are 15 other instances where there's simply, it's simply unbelievable that those instances happen. How important is this evidence of actual confusion? I thought the doctrine was that in order to establish the likelihood of confusion, you don't have to show actual confusion. It can strengthen the case, but you don't have to show it. And in fact, the district court, contrary to that doctrine, seemed to hold it against the appellant, if you will, that at least for this period of time, 1999 to 2009, there was no evidence of actual confusion, just as a matter of doctrine. Wasn't the district court wrong to ascribe such significance to the absence of that evidence? No, Your Honor, because in fact this court has determined in bigness that the fact there's a strong inference of minimum confusion or non-confusion where two marks have coexisted for a long period of time in a share market, and that's what has happened in this case. These two companies have shared common elements in their marks for over 20 years in a share market, and we're not talking only about 1966 to 1995. It's 1966 to 2008, 2009. Prior to 2010, the record is limited to 2010. Prior to 2010, there's not a single piece of evidence in that record that shows any likelihood of confusion, any. The only evidence in the record is after the adoption of the logo and the address. Counsel, let me just ask you about the sort of the state of the record on remand. The district court itself seemed to take the view that in light of the remand, with respect to five of the eight pignon factors, those five factors identified actually by the district court itself, with respect to establishing whether there's a likelihood of confusion, all five of those factors, just looking at the stand-alone mark, not taking into consideration the confusion caused by the logo, that those factors favored or entailed. Do you agree with that? Is that the state of the record? That's the state of the record. I do not agree with that, because I think that particularly the factor pertaining to prospective consumers, it was wrongly analyzed by the court. It wasn't whether Cooperativa was targeting lower income people. Did you challenge that? I mean, the district court itself did not say that it acknowledges that those five factors, it's now given in light of the remand from the First Circuit after that first panel decision, that those five factors do favor or entail. We've argued in our brief that based on this court's opinion in People's Federal versus People's United, which coincidentally was kind of like at the same time where the court issued the opinion in order here and when that opinion came out, we've argued that in the banking industry, as this court recognized in People's, in the banking industry, the type of sophistication of consumer is very important to take into consideration in cases like this. And you know what, Your Honors? I do believe that that's one of the most important aspects of this case, the industry. Trademark law always takes into consideration the facts surrounding where the goods and services are marketed or traded. The industry in this case is a very specific industry where not only this court, but many other courts have determined that a customer for banking purposes, it's a person that exercises great care in choosing what financial institution to accept or what products or services to buy or acquire. And it's particularly in instances such as those ones when the consumer is in the spot for acquiring the goods and services where likelihood of confusion has the most impact. And although this court has not made a determination, although in People's, this court made a determination regarding the sophistication of banking consumers, it didn't have the opportunity because in that case, the parties had not been in a shared market for a long period of time. It didn't have the opportunity to analyze how would this court determine or analyze actual confusion in cases in the banking industry. That's why we refer this court in our brief to cases that analyze this. And we submit the rest of our arguments in our brief, and we strongly suggest that the district court's ruling be affirmed, not only because it's what's according to the record, but because it will deprive Cooperativo Oriental of its trademark rights, which is basically the most important asset of companies nowadays without the process.